# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

_____

JASON MONTANYE,

                         Plaintiff,

     v.                              5:11-CV-1245
                                      (LEK/ATB)

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.

_____

BRANDON W. SAWYER, ESQ., Olinsky Law Group, for Plaintiff
KATRINA M. LEDERER, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred to me for report and recommendation by the Honorable Lawrence E. Kahn, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). This case has proceeded in accordance with General Order 18.

## I. PROCEDURAL HISTORY

Plaintiff "protectively filed"[1] an application for disability insurance benefits on August 21, 2008, claiming disability beginning January 1, 2003, resulting from degenerative disc disease of the lumbar spine. (Administrative Transcript (T.) 117–119). Plaintiff's application was denied initially, and plaintiff requested a hearing. (T. 83–84). Plaintiff appeared and testified at a video hearing before an

---

[1] When used in conjunction with an "application" for benefits, the term "protective filing" indicates that a written statement, "such as a letter," has been filed with the Social Security Administration, indicating the claimant's intent to file a claim for benefits. *See* 20 C.F.R. § 404.630. There are various requirements for this written statement. *Id.* If a proper statement is filed, the Social Security Administration will use the date of the written statement as the filing date of the application even if the formal application is not filed until a future date.

Administrative Law Judge ("ALJ"), Edward I. Pitts, on January 20, 2010. (T. 27–71). On June 3, 2011, the ALJ denied plaintiff's claim for benefits. (T. 14–22). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on August 25, 2011. (T. 1–4).

## II. **APPLICABLE LAW**

### A. **Disability Standard**

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work

2

activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner ] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920.  The plaintiff has the burden of establishing disability at the first four steps.  However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step.  *Id.*

## B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision.  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson*, 817 F.2d at 986.  In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 197 U.S. 229 (1938)); *Williams*, 859 F.2d at 258.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258. However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support of the ALJ's decision. *Id. See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III. <u>FACTS</u>

Plaintiff's counsel in this case has reviewed the facts his brief. (Pl.'s Br. at 2–7). Defense counsel supplemented plaintiff's review of the facts with additional facts. (Def.'s Br. at 1–7). After reviewing the record, the court will adopt the facts as stated by plaintiff's counsel and defense counsel, together with the facts as stated in the ALJ's decision, with any exceptions noted in the following discussion.

# IV.  THE ALJ'S DECISION

The ALJ found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2011.  (T. 16).  The ALJ also found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 1, 2003, as the wages reported in 2003–2009 were below the required threshold to be considered substantial gainful activity.  (T. 16).

The ALJ found plaintiff has the following severe impairments: mild learning disorder and mild degenerative disc disease.  (T. 16).  The ALJ considered medical records and found that plaintiff does not have an impairment that meets or medically equals a listed impairment.  (T. 17–18).  The ALJ found that plaintiff had the Residual Functional Capacity ("RFC") to perform light work, with some additional limitations caused by his learning disorder.  (T. 18).  The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause plaintiff's alleged symptoms, but plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were only credible to the extent they were consistent with the ALJ's RFC assessment.  (T. 18–19).

The ALJ noted that on June 19, 2008, Dr. Daniel Hay completed a form stating that plaintiff had reduced range of motion with some radicular symptoms and should avoid activity.  (T. 19; *see also* T. 270–71).  The ALJ also noted that on that date, plaintiff complained of back pain, but was not taking any medication.  (*Id.*).  An MRI of plaintiff's lumbar spine that month revealed mild degenerative disc disease and facet disease, with focal disc protrusions, and a mild degree of congenital central

5

spinal stenosis and short pedicles superimposed. (T. 19; *see also T.* 242–43). The ALJ also noted that 2008 was the first time plaintiff had sought treatment for back pain. (T. 20).

In September 2008, plaintiff went to the Center for Pain Relief, where he displayed poor range of motion, stiffness, pain to palpation in the cervical and paralumbar lower lumbar region, had a negative straight leg raising, and an extremely limited cervical neck range of motion with much myofascial pain. (T. 19; *see also* T. 274–75). The ALJ noted that the doctor stated that plaintiff's extremities were normal, and that there were no neurological or motor deficits. Plaintiff refused injections and physical therapy for pain relief. (*Id.*).

The ALJ stated that in November 2008, plaintiff saw Dr. Richard Weiskopf, who examined plaintiff and noted that plaintiff was in pain during the examination. (T. 19; *see also* T. 276–79). Dr. Weiskopf stated that plaintiff wanted to change position, and complained of pain when getting on the examination table, lying down, and getting up. (*Id.*). Although plaintiff could squat fully, he required the support of a chair to rise from squatting position. (*Id.*). The ALJ noted that plaintiff exhibited a full range of motion throughout his body, except for the positive straight leg raise. (*Id.*). The ALJ stated that Dr. Weiskopf diagnosed plaintiff with chronic low back pain with a history of a diagnosis of lumbosacral disc disease. (*Id.*).

The ALJ noted that Dr. Weiskopf stated that plaintiff had no limitation to sitting or standing, mild limitation to walking, moderate limitation to climbing and carrying, and severe limitation to bending and lifting. (T. 20; *see also* T. 279). The ALJ

6

accorded significant weight to Dr. Weiskopf's opinion to the extent it was consistent with the findings of examining orthopedic specialist Dr. Warren Wulff, who examined plaintiff in 2009. (T. 20; *see also* T. 330–32). However, the ALJ gave no weight to Dr. Weiskopf's opinion that plaintiff has severe limitations to bending and lifting, because these limitations were not consistent with his observation that plaintiff had full range of motion of the lumbar spine. (*Id.*).

The ALJ noted that Dr. Wulff reviewed plaintiff's x-rays and MRIs in November 2009, and stated that x-rays of plaintiff's cervical spine and lumbar spine were normal, and an MRI of plaintiff's lumbar spine from the previous year was also normal. (T. 19–20; *see also* T. 330–32). Dr. Wulff also stated that the MRI showed some degenerative changes at the L4–L5 and L5–S1 discs that were within normal limits. (T. 20; *see also* T. 330–32). The ALJ stated that Dr. Wulff's examination showed no muscular atrophy or asymmetry in arms, shoulders, back, or legs, and plaintiff was able to balance on heels and toes, climb onto the examination table, and walked stooped forward. (*Id.*). Dr. Wulff stated that plaintiff's lumbar flexibility was mildly limited secondary to pain, with tenderness at the lumbosacral junction in the paraspinal muscles bilaterally, but plaintiff displayed full unobstructed painless range of motion in both hips. (*Id.*).

The ALJ found that plaintiff had the physical RFC to perform light work, but also found that plaintiff's learning disorder limits him to unskilled work, even though plaintiff has had two years of college and works as a substitute teacher. (T. 18, 20). The ALJ found that plaintiff was unable to perform his past relevant work as a tree

7

trimmer or apprentice installing fixtures.  (T. 20).  The ALJ also found that plaintiff

was able to perform the basic mental demands of work, and that his additional mental

limitations had little or no effect on the occupational base of unskilled light work.  The

ALJ concluded that plaintiff was therefore not disabled as defined in the Social

Security Act.  (T. 21).

## V.  PLAINTIFF'S CONTENTIONS

Plaintiff makes the following claims:

(1)   The appeals council should have considered a report from Dr. Eduardo Tan, submitted after the ALJ's decision, and should have remanded the case to the ALJ for further evaluation of plaintiff's RFC.  (Pl.'s Br. 12–14; Pl.'s Rep. Mem. of L. 1–2).

(2)   The ALJ's RFC determination itself is not supported by substantial evidence.  (Pl.'s Br. 14–17).

(3)   The ALJ failed to properly develop the record by requesting a treating source opinion from Dr. Hay.  (Pl.'s Br. 9–11) (Dkt. No. 12).

(4)   The ALJ's should have obtained the testimony of a vocational expert.  (Pl.'s Br. 20–21).

Defendant argues that the ALJ's findings are supported by substantial evidence,

and that this court should affirm the findings of the Commissioner.  For the following

reasons, this court agrees with defendant and will recommend dismissing the

complaint.

## VI.  DISCUSSION

### A.  Residual Functional Capacity/Credibility

After the ALJ's opinion, plaintiff submitted an additional medical report from

Dr. Eduardo Tan.  Plaintiff argues that the appeals council should have considered Dr. Tan's report, and should have sent the case back to an ALJ for further evaluation of plaintiff's RFC.  Plaintiff also argues that even without this additional evidence, the ALJ's RFC determination was not supported by substantial evidence.

### 1. Legal Standards

In rendering a residual functional capacity (RFC) determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999).  An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities.  *Id.* (citing, *inter alia*, *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984)).  RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations.  *Id.* (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence.  *Trail v. Astrue*, 5:09-CV-1120 (DNH/GHL), 2010 WL 3825629, at *6 (N.D.N.Y. Aug. 17, 2010) (citing SSR 96-8p, 1996 WL 374184, at *7).

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us

to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. *See* 20 C.F.R. §§ 404.1529, 416.929; *see also Foster v. Callahan*, No. 96-CV-1858 (RSP/GJD), 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which they limit the claimant's capacity to work. 20 C.F.R. §§ 404.1529(c), 416.929 (c). When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning

claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

### 2. Evidence Presented to the Appeals Council

#### a. Legal Standards

The Appeals Council will consider additional evidence "only where it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b). If the new evidence does relate to the period in question, the Appeals Council will review the entire record, including the new evidence, and will grant review of the case "if it finds that the administrative law judge's action, finding, or conclusion is contrary to the weight of the evidence currently of record." *Rutkowski v. Astrue*, 368 Fed. App'x 226, 229 (2d Cir. 2010). Evidence submitted to the Appeals Council becomes part of the administrative record. *Id.*

#### b. Application

Here, the ALJ found plaintiff was capable of performing unskilled light work. (T. 18–20). When plaintiff requested review by the Appeals Council, counsel submitted medical reports, authored by Dr. Eduardo A. Tan, M.D. and Dr. Alan Friedman, M.D.[2] (T. 214–37). Counsel argued to the appeals council that these two medical reports should be considered because they were new and material, and showed that plaintiff could not perform light work.

The reports by Dr. Tan included a form-Medical Source Statement and several

---

[2] Plaintiff does not make any arguments based upon Dr. Friedman's report in his current memorandum.

documents entitled "Excuse Slip." (T. 220–22 (Medical Source Statement), 223–31 (Excuse Slips)). The Excuse Slips only state that plaintiff was seen in Dr. Tan's office on a particular day, and that he was "unable to return to work at this time." (*See* T. 231). The slip dated September 20, 2010, also states that plaintiff would be "released to work on 10/4/10." (*Id.*). However, other slips have boxes checked that estimate a different date by which plaintiff would be able to return to work. (*See* T. 228, Slip dated Oct. 14, 2010, stating that plaintiff would be unable to return to work for the next three months due to a concussion).

One of Dr. Tan's reports is a form, entitled "Notice and Proof of Claim for Disability Benefits." (T. 229). In this form, Dr. Tan states that he started treating plaintiff on September 20, 2010, for a concussion due to a motor vehicle accident.[3] (*Id.*). The Medical Source Statement is an RFC evaluation, indicating that plaintiff is severely restricted in his functional capacity. (T. 220). This evaluation is dated June 8, 2011, and the only diagnosis listed is "cerebral concussion." (T. 220). Dr. Tan's records indicate that he began treating plaintiff on September 20, 2010, for an injury that has absolutely no relationship to the time covered by the ALJ's opinion. The motor vehicle accident occurred after the ALJ's decision.[4] This injury and Dr. Tan's

---

[3] The fact that Dr. Tan *treated* plaintiff after the appropriate time period alone is not necessarily fatal to its consideration. *See Moses v. Sullivan*, No. 91 Civ. 6980, 1993 WL 26766, at *4 (S.D.N.Y. 1993) (citing *Parker v. Harris*, 626 F.2d 225, 232 (2d Cir. 1980) (a retrospective diagnosis may be given weight if it discloses the continuity or severity of the impairments)). This is not the case with the evidence plaintiff presented to the Appeals Council.

[4] Plaintiff states the motor vehicle accident occurred on September 16, 2010, which is also after the date of the ALJ's opinion. (*See* Pl.'s Br. at 6, *see also* T. 232).

reports are not relevant to the ALJ's RFC determination. The ALJ's RFC
determination for the period covered by his decision could not have been affected by
an injury that had not yet occurred. Dr. Tan's additional restrictions could be due to
the accident and the resulting concussion.

Plaintiff does not mention Dr. Friedman's report. However, it supports a
finding that the evidence submitted by plaintiff's attorney to the Appeals Council was
not new and material under the regulations and would not have required a
reconsideration of the ALJ's opinion. On May 2, 2011, Dr. Friedman, Board Certified
in Physical Medicine and Rehabilitation, examined plaintiff at the request of State
Farm Insurance Company. (T. 232). The purpose of the examination was to evaluate
the injuries that were allegedly caused by the motor vehicle accident that occurred on
September 16, 2010. (*Id.*).

Dr. Friedman's report stated that "at the time of the accident, the claimant was
performing janitorial duties. He has not returned to work since the accident." (T.
233). Plaintiff's symptoms were listed as blurred vision, neck pain, headaches,
numbness in his hands, low back pain, and numbness and tingling of both his legs.
(*Id.*). MRIs of the brain and cervical spine were normal, and there were no fractures
reported on x-ray. (*Id.*). Dr. Friedman noted that plaintiff had a history of low back
pain, but his gait was normal, he was able to get on and off the examination table, he
had full strength in upper and lower extremities, sensation was intact except for some
"questionably increased" sensation in his left fifth digit. (T. 235). Plaintiff had a full
range of motion. Dr. Friedman stated that there was a causal relationship between the

injuries and the accident, even though plaintiff had "a remote history of low back pain." (T. 235). The ultimate diagnosis was post concussion syndrome, cervical strain, and lumbar strain. Plaintiff's prognosis was guarded due to his "continued report of headaches and visual disturbance," and Dr. Friedman believed that plaintiff was not able to return to "his pre-accident occupation as a janitor." (T. 235).

It is clear that whatever limitations were listed by Dr. Tan and Dr. Friedman were related to an accident that occurred after the ALJ's decision. Dr. Friedman also stated that plaintiff could not return to his work as a janitor, not that he was disabled from any work. It appears that any exacerbation of symptoms was due to the accident, and the Appeals Council decision to refuse to review plaintiff's case on the basis of these two reports is supported by substantial evidence.[5]

The court will now turn to a discussion of the ALJ's opinion and whether his determination was supported by substantial evidence.

### 3. ALJ's RFC Determination

Plaintiff argues that the ALJ's finding that he can perform the lifting requirement as well as other requirements of light work[6] is not supported. Plaintiff also argues that the ALJ's credibility finding is not supported. This court does not agree.

---

[5] The court also notes that it appears from the reports that plaintiff was working as a janitor at the time of the accident in September of 2010. This is further evidence that the ALJ's finding that plaintiff could perform light work was properly supported.

[6] "Light work" involves, inter alia, "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

14

Plaintiff testified that he had been seeing PA Paul Hodgeman from the alleged date of onset in 2003 to 2008, but that during that time, PA Hodgeman was "just giving [him] medication." (T. 52). The medical record from PA Hodgeman dated June 19, 2008, states that plaintiff was "really not taking anything for pain at this point, so we would like to try something for that." (T. 244). The June 19, 2008 record indicates that plaintiff stated that he had been suffering from back pain for "a while," and an MRI ordered by plaintiff's chiropractor revealed some degenerative disc disease at L4–L5 and L5–S1, so PA Hodgeman prescribed pain medication and referred him to "neurosurgery." (T. 244; *see also* T. 242). Plaintiff also had limited range of motion due to discomfort, and PA Hodgeman stated that plaintiff had some palpable tenderness in the lumbar region bilaterally. (*Id.*). Medical Records from PA Hodgeman dated November 4, 2004 through June 19, 2008 indicate plaintiff had not complained of back pain prior to the June 19, 2008 appointment. (T. 245–54).

Plaintiff clearly received medical treatment for back pain in 2008 and 2009, but refused any treatment other than medication for pain. Plaintiff was seen by chiropractor Dr. Timothy J. Strnatka from May 28, 2008, through June 17, 2008. (T. 263–66). On August 11, 2008, Dr. Strnatka completed an orthopedic and miscellaneous disabilities medical report, and stated that plaintiff had decreased cervical range of motion, decreased lumbar range of motion, and diagnosed plaintiff with discogenic lower back pain and chronic cervicalgia. (T. 267–68). Dr. Strnatka stated that plaintiff "showed minimal response to chiropractic care." (T. 268).

On September 23, 2008, Dr. Ronnie Kanas at the Center for Pain Relief stated

that plaintiff had "poor range of motion, very stiff pain to palpation in cervical and paralumbar lower lumbar region." (T. 275). However, plaintiff declined injections and physical therapy, and Dr. Kanas prescribed ibuprofen "for generalized aches and pains and Zanaflex for muscle relaxation" along with Toradol, another pain reliever. (T. 275).

Consultative examining physician Richard Weiskopf examined plaintiff on November 14, 2008. (T. 276–279). Dr. Weiskopf stated that plaintiff was "obviously in pain during the entire interview," wanting to change position and feeling pain when getting up on the examining table, lying down, and then getting up. (T. 277). Plaintiff complained of stiffness, but Dr. Weiskopf found plaintiff had normal range of motion in normal maneuvers of the cervical spine. (T. 278). Plaintiff had bilateral lumbar spasm, tenderness over the posterior aspect of the neck and lower back, but full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally. (*Id.*). Dr. Weiskopf noted 5/5 strength in upper and lower extremities, and found plaintiff had full range of motion of shoulders, elbows, forearms, wrists, hips, knees, and ankles bilaterally. (*Id.*). Dr. Weiskopf diagnosed plaintiff with chronic low back pain and chronic neck pain, and stated that plaintiff has no limitation on sitting or standing, mild limitation on walking, moderate limitation on climbing and carrying, but had "severe" limitation on bending and lifting.[7] (T. 279).

The ALJ found that Dr. Weiskopf's opinion that plaintiff had severe limitations

---

[7] Plaintiff argues that Dr. Tan's report is "particularly consistent" with this part of Dr. Weiskopf's opinion. As the court has already found, Dr. Tan's report is inapplicable to the determination of plaintiff's RFC.

on bending and lifting was not consistent with Dr. Weiskopf's examination which revealed plaintiff had full range of motion of the lumbar spine. (*See* T. 20). The ALJ's finding was supported by Dr. Wulff's opinion and plaintiff's activities of daily living. (*See id.*).

On November 10, 2009, orthopedic specialist Dr. Warren Wulff examined plaintiff and concluded that his lumbar flexibility was "mildly limited secondary to pain," with "tenderness to palpation at the lumbosacral junction in the paraspinal muscles bilaterally." (T. 331). Dr. Wulff also found that plaintiff's x-rays were normal, and after reviewing an MRI from 2010, he concluded that the degenerative changes at L4–L5 and L5–S1 discs were within normal limits. (T. 332). Dr. Wulff diagnosed plaintiff with chronic low back pain and recommended a physiatry consultation (rehabilitation). (*Id.*).

Plaintiff testified that he worked as a photography lab technician from 2007 to 2008, as a grocery store stocker in 2005, and as a maintenance worker for satellite dishes in 2004 and 2005. (T. 33–38). While these jobs were not found to be substantial gainful activity, they were all after the alleged date of onset in January 2003 undermine plaintiff's allegations about his limitations. Plaintiff also testified that he was working part-time in maintenance as well as attending college part-time at the time of the hearing. (T. 32–35). Plaintiff testified that he helped with the dishes, but that his wife did all the cooking. (T. 58). However, in his Function Report - Adult dated October 23, 2008, plaintiff stated that he prepared meals for himself and his children. (T. 157–60).

Plaintiff testified that the heaviest object he could lift was his child, who weighed 15 pounds. (T. 56). Plaintiff testified that he did not do the grocery shopping for his household, due to his inability to lift, and he does not do yardwork. (T. 58–59). However, in the "Function Report - Adult" that he completed on October 27, 2008, plaintiff stated that he "can't lift anything over 20 lbs." (T. 161). The ALJ's conclusion that plaintiff was not credible is supported by substantial evidence showing that plaintiff claimed different limitations at different times.

Chiropractor, Dr. Strnatka stated in a report dated August 8, 2008, that plaintiff "cannot lift greater than 25 lbs." (T. 268, 312). Dr. Strnatka also stated that plaintiff "should not push/pull in [excess] of 25 lbs," which implies that plaintiff was able to push and/or pull less than 25 pounds. (*See* T. 268).

Plaintiff's application and Dr. Strnatka's report provide support for the ALJ's finding that plaintiff's alleged inability to lift the requisite amount of weight to perform light work was not credible. Plaintiff's testimony conflicted with information on his application, as noted above, and his complaints to medical sources contradict his refusal of more than intermittent conservative treatment. The medical record contains no mention of treatment for his back pain prior to 2008, despite plaintiff's testimony to the contrary. The ALJ properly assessed plaintiff's credibility, and as discussed above, the ALJ's conclusion that plaintiff could perform light work was supported by substantial evidence.

## C.    Developing the Record

### 1.    Legal Standards

Given the remedial intent of the Social Security statute and the non-adversarial nature of benefits proceedings, an ALJ has an affirmative duty, even if the claimant is represented by counsel, to develop the medical record if it is incomplete. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999); 20 C.F.R. §§ 404.1512(d), 416.912(d). In furtherance of the duty to develop the record, an ALJ may re-contact medical sources if the evidence received from the treating physician or other medical sources is inadequate to determine disability, and additional information is needed to reach a determination.  20 C.F.R. §§ 404.1512(e), 416.912(e).[8]  "Gaps in the administrative record warrant remand for further development of the record." *Toribio v. Astrue*, 06-CV-6532, 2009 U.S. Dist. LEXIS 66500, 2009 WL 2366766, at *8 (E.D.N.Y. July 31, 2009) (citing, inter alia, *Echevarria v. Secretary of Health & Hum. Servs.*, 685 F.2d 751, 755–56 (2d Cir. 1982).

### 2.    Application

Dr. Hay examined plaintiff on June 19, 2008, and filled out a report for the Office of Vocational and Educational Services for Individuals with Disabilities (VESID) on August 11, 2008.  (T. 270–71).  Plaintiff alleges that the ALJ should have recontacted Dr. Hay for a treating source opinion.  (Pl.'s Br. 9–11).  Defendant argues

---

[8] As of March 26, 2012, the Commissioner amended 20 C.F.R. §§ 404.1512 and 416.912 to remove subsection (e) and the duty that it imposed upon the ALJ to recontact the claimant's treating physician. *See Lowry v. Astrue*, 474 F. App'x. 801, 805 n.2 (2d Cir. 2012).  However, this court should apply the regulation in force at the time of the ALJ's opinion. *Id.*

that further opinion evidence from Dr. Hay was not necessary for full presentation of the case. (Def.'s Br. 10–11). There was no need to recontact Dr. Hay, who saw plaintiff one time to fill out the report for VESID, and did not have a treating relationship with plaintiff. The ALJ properly considered Dr. Hay's report along with the other medical source opinions when determining plaintiff's RFC.

### D. Vocational Expert

If a plaintiff's non-exertional impairments[9] "significantly limit the range of work" permitted by the plaintiff's exertional limitations, then the ALJ may not use the Medical-Vocational Guidelines exclusively to determine whether plaintiff is disabled. *Bapp v. Bowen*, 802 F.2d 601, 606 (2d Cir. 1986). If the plaintiff's range of work is significantly limited by his non-exertional impairments, then the ALJ must present the testimony of a vocational expert or other similar evidence regarding the availability of other work in the national economy that plaintiff can perform. *Id.* A vocational expert may provide testimony regarding the existence of jobs in the national economy and whether a particular claimant may be able to perform any of those jobs given his or her functional limitations. *See Rautio v. Bowen*, 862 F.2d 176, 180 (8th Cir. 1988); *Dumas v. Schweiker*, 712 F.2d 1545, 1553–54 (2d Cir. 1983).

In this case, the ALJ found that plaintiff's learning disorder limited him to unskilled work, despite his two years of college and work as a substitute teacher. (T. 20). The ALJ reviewed this impairment in light of Social Security Ruling 85-15

---

[9] Any impairment that significantly reduces the range of work that a plaintiff can perform may create the need for a vocational expert. Such impairments, as stated in the regulations, may be mental, postural, or environmental. 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e).

which specifically addresses how non-exertional impairments will affect a particular exertional level of work. SSR 85-15. The ALJ found that plaintiff could perform the basic mental demands of work, which include the ability to understand, carry out and remember simple instructions, respond appropriately to supervision, coworkers and usual work situations on a sustained basis, and deal with changes in a routine work setting. (T. 21). The ALJ determined that plaintiff's non-exertional limitation had "little or no effect on the occupational base of unskilled light work." (T. 21).

Plaintiff argues that chiropractor Dr. Strnatka's Orthopedic and Miscellaneous Disabilities Medical Report, which stated that plaintiff needed to be allowed to move about to decrease symptoms, indicates limitations that render the ALJ's Step 5 determination unsupported by substantial evidence. (Pl.'s Br. 18). Plaintiff also cited Dr. Tan's June 2011 report where he marked yes to a question that asked "Does your patient need a job that permits shifting positions at will from sitting and walking?" (Pl.'s Br. 18; *see also* T. 221). As explained above, Dr. Tan's report is inapplicable.

Additionally, Dr. Strnatka's suggestion of a sitting and standing limitation for plaintiff fails to establish a non-exertional impairment that would necessitate a Vocational Expert under the requirements of Social Security Ruling 85-15. *See* SSR 85-15. The ALJ considered plaintiff's limitations as part of his RFC determination, and as discussed above, consultative physician Dr. Weiskopf found that plaintiff had no limitation on sitting or standing, and mild limitation on walking. (T. 279). Chiropractor Dr. Strnatka stated that plaintiff could not sit for long periods of time without fatigue and loss of concentration, but did not specify how often plaintiff

would need to move to alleviate his symptoms. (*See* T. 268). In general, the need to be able to alternate between sitting and standing positions would not affect the remaining occupational base of light and sedentary work available to plaintiff, whom the ALJ had found could perform light work. *See Williams v. Comm'r of Social Sec.*, 2010 WL 2401280, 2010 U.S. Dist. LEXIS 57238, at *23, (N.D.N.Y. 2010) (citing SSR 83-12, 1983 SSR LEXIS 32, 1983 WL 31253, at *2 (S.S.A. 1983). Plaintiff's ability to sit for extended periods of time is evidenced by his testimony that two times per week, he drives himself to school, which is 50 minutes away. (T. 60). When the pain gets severe, he stops the car, gets out and walks around the car a couple times to relieve the pain before getting back in and resuming the drive. (T. 66). The ALJ's determination that plaintiff's nonexertional limitations did not significantly limit the occupational base of light work was supported by substantial evidence. A vocational expert was not required by the regulations.

WHEREFORE, based on the findings above, it is

RECOMMENDED, that the Commissioner's decision be AFFIRMED, and plaintiff's complaint DISMISSED IN ITS ENTIRETY.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.


Dated: November 15, 2012

Hon. Andrew T. Baxter
U.S. Magistrate Judge